IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SINCLAIR EVERETT                                                                      PLAINTIFF

V.                                              CIVIL ACTION NO.: 3:11CV299 TSL-MTP

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA; CHARTIS
CLAIMS, INC., FORMERLY KNOWN AS AIG
DOMESTIC CLAIMS, INC.; GALLAGHER BASSETT
SERVICES, INC.; J.B. HUNT TRANSPORT, INC.; and
JOHN AND JANE DOE 1-10                                        DEFENDANTS

---

**AMENDED MEMORANDUM BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
AND GALLAGHER BASSETT SERVICES, INC.**

---

**I.  INTRODUCTION**

National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC"), Chartis Claims, Inc., ("Chartis"), and Gallagher Bassett Services, Inc. ("Gallagher Bassett") request this Court to enter summary judgment in their favor.  The Plaintiff, Sinclair Everett ("Everett") cannot demonstrate that he is entitled to any occupational disability benefits from these defendants under the allegations of his Amended Complaint.  There is no genuine issue of material fact that Everett is the beneficiary of an Order of the Mississippi Workers' Compensation Commission which adjudicated, as a matter of law, that Everett is "entitled to benefits" pursuant to the Mississippi workers' compensation law.  Having received workers compensation benefit , Everett cannot now maintain a claim for occupational disability benefits pursuant to the terms of the insurance policy at issue or due to the doctrine of judicial estoppel.  Further, where Everett cannot

demonstrate any entitlement to any contractual benefits, he cannot recover for his claim for negligent infliction, bad faith, injunctive or declaratory relief.

## II.    PROCEDURAL HISTORY

Everett originally filed this action on April 15, 2011.  The action was subsequently removed to federal court.  The Plaintiff amended his Complaint on September 22, 2011.  All parties have now answered and the matter is proceeding pursuant to a case management conference conducted on December 6, 2011.

## III.    FACTS

On October 30, 2008, Everett became an owner/operator of a tractor trailer pursuant to an Independent Contractor Operating Agreement and Tractor Lease Purchase Agreement with J.B. Hunt Transport, Inc., ("JB Hunt").  See Exhibit "A".  In connection with the Independent Contractor Operating Agreement, Everett claimed he was an independent contractor of JB Hunt and not an employee.  Everett also agreed to purchase a Truckers Occupational Accident Insurance Policy ("Occ/Acc Policy").  See Exhibit "B" - Certified Truckers Occupational Accident Insurance Policy.  That policy, bearing policy number TRK0009104391(A) with effective dates of 12-01-07 to 12-01-09, was issued by NUFIC.

On November 26, 2008, Everett allegedly received injuries when he fell from the back of his tractor trailer.  Shortly thereafter, Everett made a claim for disability under the Occ/Acc Policy.  Gallagher Bassett handled the adjusting process on this claim for NUFIC.  On December 31, 2008, Gallagher Bassett, on behalf of NUFIC, after receiving needed information from the claimant (while still requesting additional documentation) made the decision to initiate benefits under the Occ/Acc Policy and approved payment

of certain benefits, pending further investigation. See Exhibit "I". NUFIC paid certain benefits under the occupational accident policy, with disputes arising with Everett as to what was owed. See Exhibit "I". Subsequently, on July 13, 2009, Kim Fitch, an employee of Gallagher Bassett, sent a letter to Everett detailing the bases on which NUFIC had paid Everett's claims and which portions of his claims they had not, together with the reasons supporting their determination. See Exhibit "I" - July 13, 2009 letter of Fitch.

The Occ/Acc policy issued to Everett specifically excludes in Section VI, the following:

> This Policy does not cover any losses caused in whole or in part by, or resulting in whole or in part from, the following:
>
> ***
>
> 11. any Injury for which the Insured Person is entitled to benefits pursuant to any workers' compensation law or other similar legislation.

While the occupational accident claim was pending and benefits under that policy were being paid, Everett retained the services of Craig Sessums of Jones Funderburk and Sessums and filed a Petition to Controvert (the administrative equivalent of a civil complaint) before the Mississippi Workers' Compensation Commission ("MWCC") alleging that Everett was an employee, as opposed to an owner/operator,[1] of JB Hunt. See Exhibit "E". The Petition to Controvert alleges that on

---

[1] Pursuant to the policy's general definitions, an "**Owner-Operator** means a person who: (1) owns or leases a vehicle which he or she is operating for the purpose of performing Occupational services; (2) **is an independent contractor as defined by law**; and (3) **is not an employee of the Policyholder**. The term Owner-Operator will include a Co-Owner if the Co-Owner otherwise meets the definition of Owner-Operator. (second emphasis added)

November 26, 2008 Everett had "received a compensable injury while in the employ of "J.B. Hunt Transport." On August 20, 2009, Everett's attorney signed an Agreed Order dismissing Everett's workers' compensation action, without prejudice. See. Exhibit "C" - Agreed Order of Dismissal Without Prejudice. Subsequently, the Claimant retained new counsel, Darryl Gibbs and moved to reinstate his workers' compensation claim. See Exhibit "D" - Motion to Reinstate to Controverted Docket. While the reinstatement of the MWCC claim was being litigated, the Plaintiff sought and received authority from the MWCC to resolve all of his claims arising out of his November 26, 2008, accident under the Mississippi Workers' Compensation Act for the sum of $17,500.00. See Exhibit "H".

    As noted above, Everett had previously received all benefits under the occupational disability policy for his November 26, 2008, injury to which NUFIC determined Everett was entitled. Only subsequently did Everett receive the benefit of a Commission approved Order authorizing payment of workers' compensation benefits in the form of lump sum settlement funds. After closure of the workers' compensation action did Everett file this suit, now claiming that he is entitled to additional contractual damages for breach of contract under the Occ/Acc Policy as an independent owner/operator of JB Hunt. Everett seeks damages for negligent infliction of emotional distress, bad faith, misrepresentation and fraud under the Occ/Acc Policy. In doing so, Everett requests this Court to rewrite that policy to provide for different terms than were originally negotiated.

## IV.   ARGUMENT

### A.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.,* 842 F. 2d 815, 816 (5th Cir. 1988). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F. 3rd 651, 655-56 (5th Cir. 1996). In response, the opponent must do more than simply show that there is some metaphysical doubt as to material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Tubacex, Inc. v. M/V RISAN*, 45 F. 3rd 951, 954 (5th Cir. 1995). The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *See Booth v. Wal-Mart Stores, Inc.,* 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *See id. (citing Phillips Oil Company v. OKC Corp.,* 812 F. 2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, .... all other contested issues of fact are rendered immaterial." *Id. (quoting Topalian v. Ehrman,* 954 F. 2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Shields v. Twiss,* 389 F. 3d 142,149-50 (5th Cir. 2004) *(citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *See Anderson,* 477 U.S. at 249. The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *See Gaddis v. Smith & Nephew, Inc.,* 534 F. Supp. 2d 697, 699 (S .D. Miss. 2008). As this court sits in diversity, it will apply state substantive law. *Ellis v. Countrywide Home Loans, Inc.,* 541 F. Supp. 2d 833, 835 (S.D. Miss. 2008) (citations omitted).

> **B.    INTERPRETATION OF THE INSURANCE POLICY UNDER MISSISSIPPI LAW**

The interpretation of insurance policy language is a question of law. *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 ¶12 (Miss. 1998). Generally under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Paul Revere Life Ins. Co. v. Prince*, 375 So. 2d 417, 418 (Miss.1979). The meaning of undefined "terms used in an insurance policy should be understood in their plain, ordinary, and popular sense rather than in a philosophical or scientific sense." *Blackledge v. Omega Ins. Co.*, 740 So. 2d 295, 298 ¶7(Miss. 1999). See also *Noxubee County School Dist. v. United Nat. Ins. Co.*, 883 So. 2d 1159, 1165 ¶15 (Miss. 2004). Courts must refrain from altering or changing a policy where the terms are unambiguous, even if it results in a

hardship on the insured. *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 656 ¶17. (Miss. 2002).

Further, insurance policies are to be construed in accordance with certain well-established rules of insurance contract interpretation. *Smith v. McDonough*, 758 F. Supp. 397 (S.D.Miss.), aff'd, 947 F. 2d 1486 (5th Cir.1991); *Western Line Consolidated School Dist. v. Continental Cas. Co.*, 632 F. Supp. 295 (N.D.Miss.1986). Insuring clauses are construed broadly to effect coverage, and exclusionary clauses that restrict coverage are construed narrowly against the insurer. To benefit from an exclusionary provision in an insurance contract, the insurer need only show that the exclusion applies and that it is not subject to any other reasonable interpretation that would afford coverage. *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658 (Miss.1994).

Ambiguity can only arise when a reasonable person could have reasonably understood a term to have more than one reasonable meaning. *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 718 ¶13 (Miss. 2004). Stated another way, a court can only find ambiguity in an insurance contract when the policy is interpreted as having two or more reasonable meanings. *Mississippi Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1265 ¶14 (Miss. 2002). Moreover, the interpretation must be reasonable pursuant to objective, not subjective standards and the interpretation must not be strained. *Allstate Ins. Co. v. Moulton,* 464 So. 2d 507, 510 (Miss. 1985); *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987). Perhaps most importantly, simply because the parties disagree about the meaning of a provision does not make that contract ambiguous as a matter of law. *Cherry* 501 So. 2d at 419. Finally, even if

the terms are ambiguous, the interpretation of those terms falls to the Court. *Blackledge v. Omega Ins. Co.*, 740 So. 2d 295, 298 ¶7 (Miss. 1999).

### C.  NO COVERAGE UNDER OCCUPATIONAL ACCIDENT POLICY

#### Policy Exclusion for Entitlement to Benefits Under Workers Compensation Law

The Occ/Acc Policy excludes Everett's claims for "any losses caused in whole or in part by, or resulting in whole or in part from, the following: . . . "any Injury for which the Insured Person is entitled to benefits pursuant to any workers' compensation law or other similar legislation."  Obviously, and as discussed *infra*, in order to recover under the Occ/Acc Policy, Everett would now have to take the position that he was not entitled to benefits pursuant to workers' compensation law.[2]  Everett claimed before the MWCC that he was JB Hunt's employee and thus entitled to compensation, and actually received compensation.  He is now estopped from changing his position.  He is estopped from denying that he was entitled to worker's compensation benefits under Mississippi law in order to recover under the Occ/Acc Policy.  Everett is estopped from now taking the position that he was not entitled to workers' compensation benefits where he sought and received those benefits.  This exclusion was triggered when Everett received an Order from the MWCC adjudicating a final compromise of the amount of his entitlement to benefits under Section 71-3-29 of the Mississippi Code.

Pursuant to Mississippi law, the MWCC is entitled to authorize a settlement in cases only "where it is not possible to determine the exact extent of disability."  Miss

---

[2]  NUFIC and Gallagher Bassett were not parties in the MWCC action and, therefore, did not participate in those proceedings.

Code Ann. § 71-3-29 (1972, as amended).  In this case, the Order Authorizing Final Compromise Settlement and Dismissing Claim with Prejudice specifically states that the MWCC had jurisdiction of Everett's claim, that it had authority for disposition of his claim under the Mississippi Workers Compensation Act including Section 71-3-29, and that the sum of $17,500.00 "represent[ed] the entire liability of the employer and carrier to claimant under this workers' compensation case for his alleged injuries. . . . "  See Exhibit "F" at pg 2 - Order Approving Final Compromise Settlement and Dismissing Claim With Prejudice.  In the Order authorizing the settlement under Section 71-3-29, Everett necessarily took the position that he was an employee of JB Hunt and therefore, entitled to benefits under workers' compensation law.  Likewise, the $17,500.00 settlement payment was expressly a lump sum payment paid "as compensation for permanent impairment that will affect the Claimant for the rest of his life."  See Exhibit "F" at pg 2.  When dealing with a lump sum payment, as in this case, "the Commission is entitled to approve settlements only when it is in the best interest of a 'person entitled to compensation.'" *Mississippi Power & Light Co. v. Cook*, 832 So. 2d 474, 480 (Miss. 2002); Miss. Code Ann. § 71-3-37(10) (1972, as amended).  The single lump sum settlement was found by the MWCC to represent payment for Everett's impairment for the rest of his life.  The MWCC could only authorize that payment where Everett was an employee "entitled to compensation."  See Miss. Code Ann. § 71-3-37(10) (1972, as amended) (only an employee acting within course and scop of employment is entitled to workers compensation benefits).  Where the MWCC ruled that Everett was "entitled to benefits" for the November 26, 2008, accident, his claim for losses are excluded under the Occ/Acc Policy in question.  Therefore, Everett's present

claim for the same losses is excluded under this Occ/Acc Policy and summary judgment is appropriate.

### D. EVERETT IS JUDICIALLY ESTOPPED FROM SEEKING OCCUPATIONAL ACCIDENT POLICY BENEFITS

Everett is judicially estopped from receiving any benefits under the Occ/Acc Policy because he recovered workers' compensation benefits pursuant to Mississippi's workers' compensation law. An award of benefits under the Occ/Acc Policy is logically inconsistent with and award under the workers' compensation statute.

> "Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The purpose of the doctrine is to prevent litigants from 'playing fast and loose' with the courts. In this Circuit, three bases for judicial estoppel' must be satisfied before a party can be estopped. First, it must be shown that 'the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position.'"

*Hall v. GE Plastic Pacific PTE Ltd.*, 327 F. 3d 391, 396 (5th Cir. 2003) *(internal citations omitted)*. Finally, a finding that the party did not act inadvertently is required. *Galloway v. Bond, Botes & Stover*, *P.C.*, 597 F. Supp.2d 676, 685 (S.D.Miss. 2008).

The first prong of judicial estoppel is satisfied where Everett recovered a lump sum compromise workers' compensation benefits through the Order of the MWCC. Such is "clearly inconsistent" with Everett's legal position in this case that he is entitled to benefits under the Occ/Acc Policy as an "Owner/Operator". As discussed *supra*, workers' compensation benefits are for the "disability or death of an <u>employee</u> from injury or occupational disease arising out of and in the course of employment without regard to fault. . . ." Miss. Code Ann §71-3-7 (1972) (emphasis added). Independent

contractors (such as Owner/Operators") are specifically excluded from the definition of an "employee" under the Act.  Miss. Code Ann § 71-3-3(d) (1972).

As opposed to workers' compensation benefits, the Occ/Acc Policy provides for certain medical and disability benefits to be paid <u>not to employees</u>, but to certain owner/operators under contract with JB Hunt.  By definition under the policy, an owner/operator is "an independent contractor as defined by law" and "not an employee of the Policyholder."  See Exhibit "B".    The second prong of judicial estoppel is satisfied where, Everett received approval for a workers' compensation settlement from the Commission.  The Commission necessarily accepted Everett's position that he was an "employee" entitled to worker's compensation benefits.  As demonstrated *supra*, the Order authorizing the settlement of Sinclair Everett's claim for a lump sum compromise amount could have been entered only where Everett convinced the MWCC that he was entitled to benefits as an "employee" and where only the amount of benefits was disputed.  Miss Code Ann. § 71-3-7(1) and 71-3-29 (1972, as amended); *Mississippi Power & Light Co. v. Cook*, 832 So. 2d 474, 480 (Miss. 2002).  While the mere dismissal without prejudice of a case would not necessarily constitute judicial acceptance of a party's position, Mississippi statutory and case law require otherwise as MWCC authorization is necessary to accept a lump sum compromise settlement of a workers' compensation claim.  *Id.*

As to the third prong for judicial estoppel, Everett was represented by legal counsel in the workers' compensation claim.  As such, he cannot now claim that he inadvertently filed and sought a recovery under the Mississippi Workers Compensation Act.  Everett "obviously knew about his lawsuit."  *Galloway,*  597 F. Supp. 2d at 685.

Everett's settlement for $17,500.00 "represent[ed] the entire liability of the employer and carrier to claimant under this workers' compensation case for his alleged injuries." See Exhibit "H" - Contract and Authority to Represent.

      All elements of judicial estoppel are satisfied. The Plaintiff cannot sue for breach of the Occ/Acc Policy where he has previously sought and received the benefit of a ruling from the Mississippi Worker's Compensation Commission. To recover under the Occ/Acc Policy is clearly inconsistent and directly contrary to the relief he received from the MWCC.

      ***E.    ALL OTHER CLAIMS ARE BARRED IF THE PLAINTIFF IS NOT ENTITLED TO CONTRACTUAL BENEFITS***

      Where Everett is not entitled to any benefits under the Occ/Acc Policy, Defendants cannot be held liable for any alleged negligent and/or bad faith failure to investigate or pay any such benefits. As argued above, the "entitled to benefits policy exclusion, and the independent grounds of judicial estoppel provide legitimate, reasonable and arguable bases upon which Defendants could deny Everett's claim for Occ/Acc benefits. First, as a matter of law, where no benefits are owed to the Plaintiff. Plaintiff cannot show that NUFIC or Gallagher Bassett was without an arguable or legitimate basis to deny his claim, either in fact or law. Second, Plaintiff cannot show malice or gross negligence in disregard of his rights under the policy. *Broussard v. State Farm Fire and Cas. Co.*, 523 F. 3d 618, 628 (5th Cir. 2008). Moreover, as Everett has no claim under the Occ/Acc Policy, there is no basis for the Court to rewrite the contract for any amount of benefits based upon Everett's now alleged status as an independent contractor under the Occ/Acc Policy where Everett received workers'

12

compensation benefits.  Under the Plaintiff's Amended Complaint, he seeks to have this Court rewrite the policy to require the Occ/Acc Policy to provide benefits for independent contractors that are equivalent to those provided to employees under the Mississippi Workers' Compensation Act.[3]  Ironically, Everett sought and recovered workers' compensation benefits.

Gallagher Bassett did not have any contract with Everett as the adjuster hired by NUFIC to adjust Everett's claim.  Gallagher Bassett's relationship with Everett was not, as a matter of law, a fiduciary relationship. *Dunn v. State Farm,* 711 F. Supp. 1359 (N.D. Miss. 1987).  Gallagher Bassett can only have liability in this action for acts that constitute malice, reckless disregard for the rights of Everett or gross negligence.  *Bass v. California Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991).  An adjuster cannot be held liable for simple negligence.  As three independent bases for denying the claim exists, and no benefits are owed, Gallagher Bassett can have no liability in this action.

Finally, Plaintiff claims that Defendants committed fraud, bad faith or negligent infliction of emotional distress[4] because the benefits provided by Occ/Acc Policy were

---

[3] Specifically, Everett's Amended Complaint requests the Court invalidate 104 week maximum benefit period for which Plaintiff Everett can receive medical benefits coverage and temporary disability coverage, and that the one million dollar face limit of the policy should be available to any claimant regardless of any of time-related terms or conditions of the policy.  Additionally, Plaintiff's request for injunctive or declaratory relief also is one in which, at least in part, there is no conceivable case or controversy requirement.  Simply put, Everett has not alleged death or that he is paralyzed or dismembered, he has no standing to request the Court to rewrite the dismemberment, paralysis or death provisions.

[4] Even if, *arguendo*, the Plaintiff were correct that Occ/Acc insurance is the equivalent of worker's compensation coverage (which is incorrect) then the  negligent infliction of emotional distress claim must be dismissed as it is barred by the exclusive remedy provision of the Mississippi Workers' Compensation Act.  *Campbell v. Jackson Business Forms Co.*, 841 F. Supp. 772, 774–75 (S.D. Miss.1994).

"not adequate" as compared to the recovery he expected under Mississippi workers compensation law. See Count IV of Plaintiff's Amended Complaint [Docket #10]. However, the Plaintiff cannot show there is any inadequacy of recovery under the Occ/Acc Policy where before the MWCC Plaintiff "represent[ed] [that] the entire liability of the employer and carrier to claimant under this workers' compensation case for his alleged injuries. . ." equaled $17,500.00. See Exhibit "F" at pg 2. The Plaintiff cannot now complain that any fraud or misrepresentation occurred where, prior to the MWCC settlement, NUFIC actually paid to or on behalf of the Claimant amounts in excess of $17,500.00. See Exhibit "J" - Print out of Amounts Paid by NUFIC. As such, Plaintiff not only received all of the benefits to which he claimed he was entitled for his alleged injuries, he has in fact received amounts in excess of what he is entitled to recovery. He previously accepted benefits paid under the Occ/Acc Policy in question and then settled his workers' compensation claim for the same injury. Where Everett (1) received more than $17,500.00 in Occ/Acc Policy benefits and then (2) represented to the MWCC that the total amount of benefits he was due for this injury in workers' compensation benefits for the same injury was $17,500.00, he cannot prove any inadequacy of his recovery. In fact, between filing inconsistent claims for the same losses,[5] Everett has already received more than twice the value of all his losses. The Plaintiff cannot create any genuine issue of material fact that these Defendants are liable for fraud or misrepresentation as to the alleged inadequacy of the Occ/Acc Policy.

---

[5] For i.e., filing claims and being paid under the Occ/Acc Policy, and filing claims and being paid workers' compensation benefits.

14

## CONCLUSION

For all the foregoing reasons, the Court should grant summary judgment in favor of National Union Fire Insurance Company of Pittsburgh, PA, Chartis Claims, Inc., and Gallagher Bassett Services, Inc.

Respectfully submitted, this the 11th day of January, 2012.

          NATIONAL UNION FIRE INSURANCE
          COMPANY OF PITTSBURGH, PA; CHARTIS
          CLAIMS, INC.; and GALLAGHER BASSETT
          SERVICE, INC.


       BY: */s/ William W. McKinley, Jr.*
          EDWARD J. CURRIE, JR. (MSB #5546)
          WILLIAM W. McKINLEY, JR. (MSB #9987)

OF COUNSEL:

CURRIE JOHNSON GRIFFIN GAINES & MYERS, P.A.
1044 River Oaks Drive
Post Office Box 750
Jackson, Mississippi  39205
Telephone: (601) 969-1010
Facsimile: (601) 969-5120
wmckinley@curriejohnson.com

## **CERTIFICATE OF SERVICE**

    I do hereby certify that I have this day served a true and correct copy of the above and foregoing instrument via electronic filing to the following counsel of record:

>Darryl M. Gibbs
>Jennie S. H. Pitts
>Chhabra & Gibbs, P.A.
>120 North Congress Street
>Suite 200
>Jackson, MS 39201
>gibbs@cglawms.com
>
>David C. Dunbar
>Morton W. Smith
>Rosalyn N. Griffin
>DunbarMonroe, PA
>270 Trace Colony Park, Suite A
>Ridgeland, MS 39157
>dcdunbar@duinbarmonroe.com

This the 11th day of January, 2012.

                                */s/ William W. McKinley, Jr.*
                                WILLIAM W. McKINLEY, JR.